United States District Court
Southern District of Texas
**ENTERED**
April 22, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Patsy E. Carmon and Kimberlee Carmon, | § § § § | |
| *Plaintiffs,* | § § | Case No. 4:22-cv-03534 |
| v. | § § | |
| Carrington Mortgage Services, LLC, | § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND RECOMMENDATION AND ORDER

In this mortgage dispute, Defendant Carrington Mortgage Services, LLC ("Carrington") filed a motion for summary judgment. Dkt. 57. Because Plaintiffs Patsy E. Carmon ("Patsy") and Kimberlee Carmon ("Kimberlee") (collectively, the "Carmons") failed to respond, the motion is deemed unopposed. *See* S.D. Tex. L.R. 7.4. After carefully considering the motion, the record, and the applicable law, it is recommended that Carrington's summary judgment motion be granted.

Separately, the Carmons filed a combined motion to reconsider and objections to the order denying their request for leave to amend the complaint. Dkt. 62 (requesting reconsideration of Dkt. 61). To the extent that the Carmons seek reconsideration, the Court denies the requested relief.

## Background

In January 2008, Patsy executed a Note for $189,350 with Hammersmith Financial, L.P. to purchase real property at 13047 Sweetgum Shores Drive, Houston, Texas 77044. Dkt. 57-2 at 2-6 (Ex. A-1, note). As security for the note, Patsy executed a deed of trust, which was recorded in Harris County, Texas on January 22, 2008. Dkt. 57-2 at 8-21 (Ex. A-2, deed of trust).

After Patsy defaulted on the loan, she applied for and received a loan modification with Bank of America in January 2011. Dkt. 57-2 at 23-27 (Ex. A-3, first modification); *id.* at 29-31 (Ex. A-4, amended and restated note); *id.* at 33 (Ex. A-5, modification agreement supplement to deed of trust). Patsy remained in default and received a second loan modification in August 2013. Dkt. 57-3 at 35-51 (Ex. A-11, second modification). Patsy defaulted again and executed a third loan modification in September 2014. Dkt. 57-4 at 2-15 (Ex. A-15, third modification). But Patsy defaulted again and submitted another loan assistance application in January 2016. *Id.* at 27-28 (Ex. A-18, home loan assistance process letter).

In 2016, Carrington began servicing the loan and sent notices to Patsy advising her of ongoing default and Carrington's intent to foreclose on the property. *Id.* at 30-61 (Ex. A-19, 2016-17 intent-to-foreclose notices). Patsy executed a fourth loan modification in January 2018. Dkt. 57-5 at 5-13 (Ex. A-21, fourth modification). When Patsy defaulted again, Carrington sent notices

of intent to foreclose in July 2018, January 2020, and February 2020. *Id.* at 15-18 (Ex. A-22); *id.* at 40-51 (Ex. A-26). Patsy then sought COVID-19 loan forbearance, which was granted and extended multiple times and ended on September 30, 2021. Dkt. 57-6 at 2-28 (Exs. A-28 to A-31).

After the forbearance period ended, Patsy applied for loss mitigation assistance in November 2021. *Id.* at 30-35 (Ex. A-32, mortgage assistance application form). On January 8, 2022, Jack O'Boyle & Associates, representing Carrington, sent Patsy a notice of acceleration and foreclosure and a notice of appointment of substitute trustee and sale. *Id.* at 37-44 (Exs. A-33, notice of acceleration; A-34, appointment of substitute trustee). Patsy was approved for a fifth loan modification in February 2024, but the agreement was never executed. *Id.* at 49-85 (Exs. A-36 to A-39). Between November 2021 and August 2022, the Carmons sent Carrington numerous notices of error, qualified written requests, cease and desist letters, and other inquiries. *See id.* at 87-103 (Ex. A-40); Dkt. 57-7 at 1-41, 51-84 (Exs. A-41 to A-50, A-52 to A-55); Dkt. 57-8 at 1-39 (Exs. A-56 to A-60).

The Carmons sued Carrington in state court on September 2, 2022. Dkt. 1-1. That court granted a temporary restraining order ("TRO") on September 6, 2022, which would later expire on October 4, 2022. *Id.* at 47-48, 95. In the interim, Carrington—which had not been served—proceeded with foreclosure on September 6, 2022, but rescinded the sale the next day. Dkt. 57-

8 at 40-42 (Ex. A-61, September 7, 2022 rescission-of-foreclosure notice); *see also* Dkt. 1-1 at 97-100 (September 14, 2022 service by certified mail).

After being served, Carrington removed the case to this Court. Dkt. 1. The Court denied the Carmons' motion to remand. Dkt. 5, 17. Carrington then filed a motion for judgment on the pleadings. Dkt. 13. This Court granted the motion but allowed the Carmons to amend certain claims, namely Patsy's RESPA claim and the Carmons' TDCA and fraud claims. *See* Dkt. 19 at 25-26 (December 5, 2023 memorandum and recommendation); Dkt. 25 (January 12, 2024 order adopting Dkt. 19).

While this litigation was pending, in February 2023, the Carmons applied to the Homeowner Assistance Fund ("HAF") program of the Texas Department of Housing and Community Affairs. Dkt. 57-10 (Ex. C, email correspondence confirming HAF application). Two days later they received confirmation that the HAF program would disburse $65,000 toward the delinquent loan. Dkt. 57-11 (Ex. D, email correspondence between the Carmons and Carrington counsel Jon Patterson). On March 10, 2023, the loan was fully reinstated. Dkt. 57-13 (Ex. F, Jon Patterson email to Kimberlee). That correspondence included a reminder that a $1,468.56 payment was due April 1, 2023. *See id.* at 2.

But Patsy failed to make that payment, blaming the delay on money owed to the Homeowners Association that the Carmons believed should have

been paid from the HAF disbursement. *See* Dkt. 57-14 (Ex. G, Kimberlee email to Jon Patterson). Patsy had received the maximum-per-household amount of HAF assistance, $65,000, all of which the State applied to the delinquent loan. *See* Texas Dep't of Housing and Community Affairs, Homeowner Assistance Fund (HAF) Program, https://perma.cc/6G6H-9Y5Q (last visited April 21, 2025); Dkt. 57-11 at 3 (Ex. D, Jon Patterson email to Kimberlee indicating $65,000 from HAF would be applied to loan).

On December 26, 2024, the Carmons filed their amended complaint, asserting claims under the TDCA, *see* Dkt. 20 at 19-22, RESPA, *id.* at 22-24, and for fraud (including fraud by nondisclosure), *id.* at 24-35, violation of a TRO, *id.* at 35-36, and vicarious liability, *id.* at 36-38. On December 31, 2024, Carrington moved for summary judgment on all claims. Dkt. 57.

The Carmons did not respond to the motion for summary judgment. Instead, on February 11, 2025, long after discovery had closed, the Carmons filed a motion requesting leave to file yet another amended complaint. *Compare* Dkt. 60 (motion for leave), *with* Dkt. 35 at 2 (November 1, 2024 discovery deadline). The Court denied the Carmons' motion for leave. Dkt. 61. The Carmons then filed combined objections to and a request for reconsideration of the order denying leave to amend, further requesting a hearing on the issue. Dkt. 62. Both the motion for summary judgment and the Carmons' motion for reconsideration are ripe for resolution.

## Standard of Review

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue it addresses "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quotation omitted). "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party …." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001). In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing] credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022). But "[u]nsubstantiated assertions, improbable inferences, and unsupported

6

speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

"Under federal law, ... it has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

When applying these standards, pleadings of pro se litigants are liberally construed. *See Jennings v. Towers Watson*, 11 F.4th 335, 341 (5th Cir. 2021) (employment case); *see also Luna v. Davis*, 59 F.4th 713, (5th Cir. 2023) (Section 1983 case). But *pro se* parties "must comply with the Federal Rules of Civil Procedure and present proper summary judgment evidence." *Rolen v. City of Brownsfield*, 182 F. App'x 362, 365 (5th Cir. 2006) (per curiam) (citing *Gordon v. Watson*, 622 F.3d 120, 123 (5th Cir. 1980)).

<u>Analysis</u>

## I.    <u>The Carmons failed to raise a fact issue on their claims.</u>

Carrington seeks summary judgment on all the Carmons' claims. *See generally* Dkt. 57; Dkt. 20. Although the Carmons' failure to respond means that Carrington's motion is deemed unopposed, *see* S.D. Tex. L.R. 7.4, that does not automatically entitle Carrington to summary judgment in its favor. *See*

*Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (noting this principle applies "even if failure to oppose violated a local rule").   Rather, as the movant, Carrington "has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed."  *See id.*; *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 & n.3 (5th Cir. 1995) (quoting *Hibernia*).   But Carrington also can obtain summary judgment in its favor if it shows that the Carmons, who have the burden of proof, "failed to establish an element essential to [their] case."  *Austin*, 864 F.3d at 335.   As reflected below, Carrington has met its burden to show that summary judgment is warranted.

A.   **The Court disregards previously barred and extraneous claims.**

As Carrington notes, the Carmons' live pleading lists numerous statutes without any context or application and refers to certain statutory claims that this Court has already dismissed.  *See* Dkt. 57 at 47-49.  Those references are disregarded.

First, the amended complaint lists various criminal statutes.  *See* Dkt. 20 at 19, 24, 28, 32, 34-37 (citing 18 U.S.C. §§ 875(d), 876(d) (extortion provisions regarding threatening communications in interstate commerce or mail); Tex. Pen. Code §§ 6.01, 6.02 (requiring a voluntary act or omission and

a culpable mental state); Tex. Pen. Code §§ 37.02, 37.03 (misdemeanor perjury and felony aggravated perjury)).  Carrington is correct that those criminal statutes do not provide a private right of action.  *See* Dkt. 57 at 48-49; *see, e.g., Lockwood v. Municipalities*, 2021 WL 3628749, at *4 (N.D. Tex. July 9, 2021) (collecting cases).  As a matter of law, those statutes cannot support recovery.

Second, the Court disregards allegations regarding claims that have already been dismissed.  In particular, the Court previously rejected the Carmons' claims under the Texas Property Code and Housing and Urban Development regulations.  *Compare* Dkt. 20 at 20, 22, 24, 27-28, 32-37 (citing Tex. Prop. Code §§ 51.0025, 51.0074 and multiple subsections of 24 C.F.R. § 203, Subpart C (HUD regulations governing mortgage servicing)), *with* Dkt. 19 at 10-11, 19-21 (recommending dismissal of those claims), *adopted by* Dkt. 25 (granting Carrington's motion for judgment on the pleadings).  Those allegations provide no basis for relief.

Third, the amended complaint refers to non-existent statutes and uses incomplete and indiscernible citations to others.  *See* Dkt. 20 at 19 (citing non-existent "Tex. Bus & Com Code 2.6109a)(1)(2) [all sic]"); *id.* at 24 ("31 U.S.C False (a)(1)(A)(B)").  The Court disregards these errant citations.  *See, e.g., Ford v. City of Pittsburgh,* 2016 WL 4367994, at *11 (W.D. Pa. Aug. 15, 2016) ("[B]ecause an inaccurate citation is no better than no citation, … inaccurate citations will not be considered.").

In addition, the Carmons cite the False Claims Act ("FCA") three times. *See* Dkt. 20 at 19, 24, 28 (citing 31 U.S.C. § 3729 under claims of unlawful debt collection, fraud by nondisclosure, and fraud). But as Carrington argues, the Carmons fail to articulate any allegations raising a cognizable FCA claim, nor have they attempted to substantiate them.[1] *See id.*; *see also* Dkt. 57 at 48. Those references are rejected.

### B.    No fact issues remain on the Carmons' other claims.

#### 1.    Unlawful debt collection under the TDCA

Carrington asserts that the amended complaint cites provisions of the TDCA without explaining their application. *See* Dkt. 57 at 28 (citing Dkt. 20 at 19-22). As construed by Carrington, this cause of action concerns Carrington's numerous attempts to foreclose on the Carmons' property starting in 2016, and most of the disputed actions are barred by the statute of limitations. *Id.* (citing Dkt. 20 at 19-22). Carrington further argues that its actions around foreclosure and loan modification do not support a TDCA claim. *See id.* at 30-32.

---

[1] Indeed, an FCA claim seeks recovery on behalf of the United States, not a private party's own asserted injuries. *See* 31 U.S.C. §§ 3729, 3730. Such claims have numerous and detailed procedural requirements, *see, e.g.*, *id.* § 3731, and cannot be brought by *pro se* parties, *see United States ex rel. Paul v. Abbott*, 2023 WL 7002060, at *2 (W.D. Tex. Oct. 24, 2023) (collecting circuit authorities), *adopted by* 2023 WL 8494392 (W.D. Tex. Dec. 6, 2023).

i.    *Time-barred TDCA claims*

According to Carrington, the Carmons' TDCA claims are time-barred because they target conduct in 2016 and 2017.  *See* Dkt. 57 at 29 (citing Dkt. 20 at 21).  The Court agrees.  Courts have reached different conclusions about whether a two- or four-year limitations period applies to TDCA claims.  *See* Tex. Fin. Code § 392.001 et seq.; *compare, e.g., Clark v. Deutsche Bank Nat'l Tr. Co., as Trustee for Morgan Stanley ABS Cap. I, Inc., Tr. 2006-HE3,* 719 F. App'x 341, 343 & n.1 (5th Cir. 2018) (per curiam) (applying a two-year limitations period by analogy to Section 16.003), *and Williams v. PHH Mortg. Corp.,* 604 F. Supp. 3d 552, 555 (S.D. Tex. 2022) (finding "TDCA claims are thus a species of [DTPA] claims" and applying a two-year limitation period), *with Vine v. PLS Fin. Servs., Inc.*, 2018 WL 456031, at *16-17 (W.D. Tex. 2018) (finding neither the Deceptive Trade Practice Act's nor Section 16.003 of the Texas Civil Practice & Remedies Code's two-year limitations period analogous; applying the four-year residual limitations period to the TDCA).[2]

Under either limitations period, the TDCA claim is untimely.  *See* Dkt. 57 at 29-30.  Because the Carmons brought this suit on September 2, 2022, Dkt. 1-1 (original petition), any conduct prior to 2018 cannot support recovery

---

[2] For further analysis of how Texas and federal courts are divided on this question, *see* Mitchell J. Armstrong, *The Statute of Limitations Period for TDCA Claims*, 24 J. Consumer & Com. L. 11 (2020).

even if a four-year limitations period applies. Moreover, the Carmons present no evidence of actionable conduct post-dating September 2, 2018. Summary judgment is warranted against their TDCA claim.

ii.    *Inapplicable TDCA provisions*

Carrington rightly asserts that the Carmons' citations to several TDCA provisions are irrelevant to the facts of this case. *See* Dkt. 57 at 32-33 (citing Tex. Fin. Code §§ 392.202, 392.302, 392.303).

Section 392.202 applies when an individual disputes the accuracy of an item in a third-party debt collector's or credit bureau's files. *See* Tex. Fin. Code § 392.202. The record shows no such dispute. *See generally* Dkt. 57; Dkt. 20.

Section 392.302 governs a debt collector's harassment or abuse by obscene language or threatening or harassing telephone calls. *See* Tex. Fin. Code § 392.302. There is no evidence of such harassment; the Carmons' exhibits contain mostly email and mail correspondence. *See generally* Dkt. 20.

Section 392.303 covers unfair or unconscionable conduct by debt collectors, such as collecting fees not expressly authorized by agreement. *See* Tex. Fin. Code § 392.303. There is no evidence that Carrington used such means. *See generally* Dkt. 20; Dkt. 57. Carrington is not liable under those irrelevant TDCA provisions.

iii.    *No evidence of debt collection activities*

Carrington argues that attempts to foreclose on a loan in default, foreclosure postponement, and loan modification are not actionable under the TDCA. *See* Dkt. 57 at 30-32. Carrington also argues that the TDCA claim fails because the Carmons have not shown damages resulting from any alleged violations. *See id.*

Generally, foreclosure or the threat of foreclosure is not an action "prohibited by law" when a plaintiff has defaulted on a mortgage. *See* Tex. Fin. Code § 392.301(a)(8) (prohibiting "threatening to take an action *prohibited by law*") (emphasis added); *see also Adams v. U.S. Bank, N.A.,* 2018 WL 2164520, at *7 (N.D. Tex. Apr. 18, 2018) (citing *Rucker v. Bank of Am., N.A.,* 806 F.3d 828, 831 (5th Cir. 2015)). Uncontroverted evidence shows that Patsy's mortgage was in default when Carrington initiated foreclosure. *See, e.g.,* Dkt. 57-4 at 27 (Ex. A-18, January 2016 Bank of America letter initiating home loan assistance process); *id.* at 30-61 (Ex. A-19, 2016-17 Carrington letters to Patsy noticing default and intent to foreclose); Dkt. 57-5 at 15-18 (Ex. A-22, July 2018 notice of default and intent to foreclose). Carrington's activities did not violate Section 392.301.

Furthermore, the TDCA does not apply to communications regarding loan modification or postponement of foreclosure. Neither of those activities constitutes debt collection covered by the TDCA. *See* Tex. Fin. Code

§ 392.304(a)(8); *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013) (loan modification and foreclosure postponement do not affect the "character, extent, or amount" of the loan under 392.204(a)(8) when a plaintiff knows she has a mortgage debt in default).

Aside from providing notice of intent to foreclose, Carrington's interactions with the Carmons involved loan modification and foreclosure postponement. *See, e.g.,* Dkt. 57-6 at 30-35 (Ex. A-32, mortgage assistance application); *id.* at 48-86 (Exs. A-36 to A-39, emails regarding loan modification); Dkt. 57-11 (Ex. D, email confirming HAF support); Dkt. 57-13 (Ex. F, Carrington email confirming loan reinstatement); Dkt. 57-8 at 40-42 (Ex. A-61, September 7, 2022 notice of rescission of foreclosure). Those communications cannot support a TDCA claim. Carrington is entitled to summary judgment on all TDCA claims.

### 2.    The RESPA claims

As an initial matter, Carrington argues that Kimberlee, the non-borrower Plaintiff, has no standing to sue under RESPA. *See* Dkt. 57 at 33. Carrington is correct that the Court already dismissed Kimberlee's RESPA claims for lack of standing. *See* Dkt. 19 at 7-9 (citing *Bridges v. Bank of N.Y. Mellon*, 2018 WL 836061, at *8 (S.D. Tex. Feb. 12, 2018)). Kimberlee offers nothing that warrants revisiting that conclusion. She cannot revive the RESPA claim.

As for Patsy's RESPA claims, Carrington asserts that Patsy has no evidence showing a link between its behavior and her asserted injuries. *See* Dkt. 57 at 34-35. To recover under RESPA, a borrower must show she suffered actual damages resulting from the alleged violation. *See Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 795 (5th Cir. 2014) (per curiam) (stating this principle); *see also* 12 U.S.C. § 2605(f)(1)(A) (authorizing "actual damages to the borrower *as a result of*" the violation) (emphasis added). Additional statutory damages of up to $2,000 are available, but only "in the case of a pattern or practice of noncompliance with" RESPA's provisions. *See* 12 U.S.C. § 2605(f)(1)(B). But Patsy has not substantiated any RESPA violation, much less a pattern or practice of such violations, nor presented evidence of resulting damages. The RESPA claim therefore fails.

### 3.   The fraud claims

Carrington argues that the fraud-by-nondisclosure claim fails because it had no special duty of disclosure. *See* Dkt. 57 at 36-38. In addition, Carrington asserts that the Carmons' other fraud claims rely on inadmissible statements, are unsubstantiated, and are barred by limitations or the economic loss rule. *See id.* at 39-44.

#### i.   *Carrington had no duty to disclose.*

Carrington is correct that, as a loan servicer, its lack of a special relationship with the Carmons negates a fraud-by-nondisclosure claim.

15

"Fraud by non-disclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)). To establish fraud by non-disclosure, the plaintiff must show:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury.

*See id.* at 219-20. Generally, there is no duty to disclose without evidence of a confidential or fiduciary relationship. *See id.* at 220. No such relationship exists between a lender and a borrower. *See, e.g., Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007) (collecting cases).

There is no evidence that Carrington had a confidential or fiduciary relationship with either Patsy or Kimberlee giving rise to a duty to disclose. This negates the Carmons' fraud-by-nondisclosure claim.

> ii.    *Fraud claims concerning settlement and HAF assistance lack merit.*

The amended complaint accuses Carrington's counsel, Jon Patterson, of falsely representing during negotiations in October to December 2022 that Carrington would "settle claims for a[n] agreed dollar amount," "in exchange

for loan reinstatement," the Carmons' application for and Carrington's receipt of HAF funds, and the Carmons' dismissal of their claims with prejudice. *See* Dkt. 20 at 30-32. No evidence supports these allegations.

To the extent that the fraud claim is premised on Carrington's alleged failure to follow through with its promise to resolve the case, that theory would be barred. This is because statements during settlement negotiations cannot be used to establish liability. *See* Fed. R. Evid. 408; *see also, e.g., Lamb v. Crites*, 2012 WL 6629684, at *2 (S.D. Tex. Dec. 18, 2012) (Rule 408 "prohibits the admission of evidence that an attempt to settle was made, as well as 'conduct or a statement made during compromise negotiations,'" for the purpose of establishing liability, the claim amount, or for impeachment) (quoting Rule 408(a)). Alternatively, assuming that the Carmons are accusing Carrington of fraudulently inducing a settlement agreement, they have proffered no evidence that an enforceable settlement agreement was reached.

More likely, however, the Carmons appear to claim that Carrington failed to properly apply the HAF funds to their loan. *See* Dkt. 20 at 32 (asserting that Carrington "reneged" on the agreement by imposing "unauthorized charges, fees, and expenses" when applying HAF funds). But Carrington's uncontroverted evidence shows that it followed the State of Texas's directives by applying the HAF money to fully reinstate the loan. *See* Dkt. 57 at 40; Dkt. 57-9 (Ex. B, Kimberlee's February 10, 2023 email to Jon

Patterson about the HAF application process); Dkt. 57-10 (Ex. C, confirmation of the Carmons' February 14, 2023 HAF application); Dkt. 57-11 at 3 (Ex. D, February 16, 2023 discussion of $65,000 HAF funding from Texas); Dkt. 57-12 (Ex. E, February 28, 2023 Carrington email confirming working with Texas to obtain the $65,000 of HAF money and reinstate loan); Dkt. 57-13 (Ex. F, March 10, 2023 email confirming loan reinstatement). The Carmons have failed to raise a fact issue on these fraud theories.

iii.    *The remaining fraud claims are barred.*

The amended complaint includes fraud allegations complaining about Carrington's loan servicing activities in 2016 to 2022. *See* Dkt. 20 at 32-35. But the statute of limitations for fraud is four years. Tex. Civ. Prac. & Rem. Code 16.004(a)(4); *see also, e.g., Boroja v. Le Roux*, 2025 WL 777729, at *3 n.1 (Tex. App.—Austin Mar. 12, 2025, no pet. h.). Because this case was filed on September 2, 2022, *see* Dkt. 1-1 at 4, all fraud claims based on activities pre-dating September 2, 2018 are time-barred. *See* Dkt. 20 at 32-35 (alleging false representations in 2016-18).

In addition, the amended complaint alleges that Carrington made false reports to the Federal Housing Authority that damaged the Carmons. *See* Dkt. 20 at 33. Those allegations lack specifics and unsupported by any evidence at the summary-judgment stage. This allegation fails.

As a further flaw, many of the fraud allegations are barred by the economic loss rule. "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.,* 445 S.W.3d 716, 718 (Tex. 2014). Contrariwise, the rule does not bar tort claims stemming from breaches of duty "independent of the contractual undertaking" if the resulting harm "is not merely the economic loss of a contractual benefit." *See id.* The plaintiff must show that her injury is, in fact, independent of the contractual expectancy. *See Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.—Dallas 2008, no pet.) (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 664 (Tex. 1998)).

As Carrington explains, the Carmons' fraud claims stem from Carrington's loan servicing activity, which is governed by the deed of trust. *See* Dkt. 57 at 43-44; Dkt. 20 at 32-35; Dkt. 57-2 at 7-21 (Ex. A-2, deed of trust). And as Carrington argues, the Carmons have not attempted to show that their claimed injury is independent of their expectancy under the parties' contracts. The economic loss doctrine therefore bars their fraud claims. Summary judgment is merited on all those claims.

4. <u>Civil contempt</u>

Carrington argues that no court order, including the TRO, supports the Carmons' further request for a finding of contempt.[3] *See* Dkt. 57 at 44-46; Dkt. 20 at 35-36. "A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992); *see also Whitcraft v. Brown*, 570 F.3d 268, 271-72 (5th Cir. 2009). State court restraining orders prior to removal remain in force for only the same duration as they would have had in state court, subject to the 14-day outside limitation in Fed. R. Civ. P. 65(b)(2) post-removal. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 435-40 (1974) (analyzing interplay between 28 U.S.C. § 1450 and Rule 65(b)).

The amended complaint alleges that Carrington "instructed [its] agents … to violate a Temporary Restraining Order, issued on September 6, 2022." *See* Dkt. 20 at 35-36 (reciting Texas rules and principles only). The record

---

[3] As Carrington observes, the Carmons misplace reliance on Texas Rule of Civil Procedure 692; rather, the Federal Rules of Civil Procedure apply in federal court. *See* Fed. R. Civ. P. 81(c)(1); Dkt. 57 at 44; Dkt. 20 at 35. Federal Rule of Civil Procedure 65 would apply to a TRO in federal court, but as discussed below, no such order exists in this matter. *See* Fed. R. Civ. P. 65(b).

negates any such violation. Carrington could not have committed contempt by conducting a foreclosure sale on September 6, 2022 (which was rescinded the next day), when it was not served with the TRO until eight days after the TRO's issuance. *See* Dkt. 57-8 at 40-42 (Ex. A-61, September 7, 2022 notice of rescission); Dkt. 1-1 at 97-100; *see also* Fed. R. Civ. P. 65(a)(2) (TRO binds only those with "actual notice"); *Texas v. Dep't of Lab.*, 929 F.3d 205, 210 (5th Cir. 2019) (same). Moreover, the TRO expired, by its own terms, on October 4, 2022. *See* Dkt. 1-1 at 54, 95; Dkt. 20 at 35. This means the TRO was no longer in effect when Carrington removed the case nine days later. *See* Dkt. 1 (October 13, 2022 notice of removal). And this Court has not entered any injunction that could give rise to contempt. No evidence supports a finding of civil contempt against Carrington.

## C.    Vicarious liability

As Carrington argues, references to "vicarious liability" in the amended complaint cannot support relief. *See* Dkt. 57 at 46-47. Vicarious liability is not an independent cause of action. *See Spano v. Whole Foods, Inc.*, 2023 WL 9502990, at *6 (W.D. Tex. Dec. 7, 2023). Instead, it is a legal theory that imputes the liability of an agent to a principal. *See id.* (citing *Painter v. Amerimex Drilling I, Ltd.,* 561 S.W.3d 125, 130 (Tex. 2018); *Hansen v. Protective Life Agency*, 642 F. Supp. 3d 587, 594-95 (S.D. Tex. 2022)).

Although the amended complaint lists purported agents, the Carmons presented no evidence that those persons committed any wrongdoing for which Carrington should be vicariously liable. *See* Dkt. 20 at 36-38 (listing Jack O'Boyle & Associates, Carrington employees, departments within Carrington Mortgage, and other entities). This theory fails.

## II.   **The Carmons proffered no valid basis for reconsidering the order denying leave to amend.**

This Court previously denied the Carmons' amended motion for leave to file a second amended complaint because the deadline for amendment had passed, the Carmons failed to show good cause, and allowing new claims would be highly prejudicial to Carrington, which had already moved for summary judgment. *See* Dkt. 61 (February 13, 2025 order denying Dkt. 60). The Carmons' motion for reconsideration of that ruling is similarly deficient. *See generally* Dkt. 62.

Although the Federal Rules do not explicitly authorize motions for reconsideration, such a motion is "generally considered a motion to alter or amend a judgment under Rule 59(e) if it seeks to change the order or judgment issued." *See Vlasek v. Wal-Mart Stores, Inc.*, 2008 WL 167082, at *1 (S.D. Tex. Jan. 16, 2008). Under Rule 59(e)'s standard, a motion to alter or amend "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of the judgment [or order]." *Id.*

at *2 (quoting 11 Charles A. Wright, et al., Federal Practice & Procedure § 2810.1 at 127-28 (2d ed. 1995)).

The Carmons' motion for reconsideration does not satisfy the Rule 59(e) threshold. Their latest contentions attempt to inject numerous allegations against Carrington's counsel. *See* Dkt. 62 at 3-6. In addition to being unsubstantiated, some of them rehash allegations already raised and rejected as a basis for permitting leave to amend. *Compare* Dkt. 60 at 7 (asserting that Carrington "misappropriated" escrow funds), *with* Dkt. 62 at 3 (referencing same allegedly "unauthorized charges, fees, and expenses assessed to the borrowers account"). To the extent that the Carmons' assertions are new, they cannot be considered at the reconsideration stage. And to the extent that they overlap with prior assertions, the Court has already deemed them insufficient to justify amendment.

As the Court previously concluded, "allowing [the Carmons] to revamp their allegations and inject new claims would be highly prejudicial" at this late stage. *See* Dkt. 61 at 3. The Fifth Circuit has held that a district court acts within its discretion to deny similarly belated requests for leave to amend that lack any showing of due diligence. *See, e.g.*, *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam) (affirming denial of leave to amend that was filed "the same day defendants filed their motion for summary judgment"); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (affirming denial

of leave to amend sought "well over a year" after suit was filed, "several months after discovery" had terminated, and after the defendant had moved for summary judgment); *accord Nwachukwu v. U-Haul Co. of La.*, 2025 WL 721303, at *4-5 (E.D. La. Mar. 6, 2025) (collecting cases; finding that granting leave to amend—after the expiration of discovery and the filing of a summary-judgment motion, and two months before trial—would be prejudicial). The Carmons have offered nothing that warrants revisiting the Court's conclusion. Their motion for reconsideration is denied.

## Recommendation and Order

For the foregoing reasons, it is **RECOMMENDED** that Defendant Carrington Mortgage Services, LLC's motion for summary judgment (Dkt. 57) be **GRANTED**. It is further **RECOMMENDED** that, pursuant to Fed. R. Civ. P. 58(a), this Court enter a final judgment stating as follows:

- Plaintiff Kimberlee Carmon's claims under RESPA and the Texas Property Code be **DISMISSED WITHOUT PREJUDICE** for lack of standing, Dkt. 19 at 9 (adopted by Dkt. 25);

- Both Patsy Carmon's RESPA and Texas Property Code claims, and all other claims asserted by Plaintiffs, be **DISMISSED WITH PREJUDICE**.

It is **ORDERED** that the remaining deadlines in this case, *see* Dkt. 35 (February 28, 2024 order amending scheduling order), are vacated pending the Court's consideration of this memorandum and recommendation.

It is further **ORDERED** that Plaintiffs' request to reconsider (Dkt. 62) the February 13, 2025 order denying leave to amend (Dkt. 61) is **DENIED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on April 22, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

25